IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.

THE CHARTER OAK FIRE INSURANCE COMPANY, and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Plaintiffs,

v.

21ST CENTURY ONCOLOGY INVESTMENTS, LLC;
21ST CENTURY ONCOLOGY SERVICES, LLC;
21ST CENTURY ONCOLOGY HOLDINGS, INC.;
21ST CENTURY ONCOLOGY MANAGEMENT SERVICES, INC;
21ST CENTURY ONCOLOGY, INC.;
21ST CENTURY ONCOLOGY, LLC;
21ST CENTURY ONCOLOGY OF CALIFORNIA, A MEDICAL CORPORATION; and

PLAINTIFFS IN THESE CLASS ACTIONS PENDING IN THE MIDDLE DISTRICT OF FLORIDA, FORT MYERS DIVISION:

1. STUART KAPLAN, et al.,
   Civil Action No. 2:16-CV-210-SPC-CM

2. JOHN DICKMAN, et al.,
   Civil Action No. 2:16-CV-218-UA-MRM

3. RONA POLOVOY, et al.,
   Civil Action No. 2:16-CV-219-UA-MRM

4. JIM BIMONTE, et al.,
   Civil Action No. 2:16-CV-223-UA-MRM

5. STACEY SCHWARTZ, et al.,
   Civil Action No. 2:16-CV-241-UA-MRN

6. ROBERT RUSSELL, et al.,
   Civil Action No. 2:16-CV-242-SPC-MRM

7. DOLORES STUBBS, et al.,
   Civil Action No. 2:16-CV-245-JES-MRM

8. TIMOTHY MEULENBERG, et al.,
   Civil Action No. 2:16-CV-332-JES-MRM

9. MARY BARBIERI, et al.,
   Civil Action No. 2:16-CV-252-UA-MRM

10. WILHELM RADAUSCHER, et al.,
    Civil Action No. 2:16-CV-257-UA-MRM

11. MAUREEN TRELEASE, et al.,
    Civil Action No. 2:16-CV-258-UA-MRM

12. GEORGE DELGADO, et al.,
    Civil Action No. 2:16-CV-259-UA-MRM

13. MATTHEW BENZION, et al.,
    Civil Action No. 2:16-CV-591-UA-MRM

14. GAYLE BIRKEN-SIKORA, et al.,
    Civil Action No. 2:16-CV-334-UA-MRM

15. VENETA DELUCCHI, et al.
    Civil Action No. 2:16-CV-695-FTM-99CM

PLAINTIFFS IN THESE CLASS ACTIONS
PENDING IN THE SUPERIOR COURT OF CALIFORNIA,
RIVERSIDE COUNTY.

1. MELQUIADES BONILLA, et al.,
   Case No. RIC1606640

PLAINTIFFS IN THESE CLASS ACTIONS
PENDING IN THE SUPERIOR COURT OF CALIFORNIA,
ALAMEDA COUNTY.

1. DANIEL PADILLA, et al.,
   Case No. RG16817512

2. JAMES CORBEL, et al.
   Case No. RG16 813051

Defendants.
_______________________________________________/

**<u>COMPLAINT FOR DECLARATORY JUDGMENT</u>**

NOW COMES PLAINTIFFS, THE CHARTER OAK FIRE INSURANCE COMPANY ("Charter Oak") and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers"), by and through their attorneys, and for their Complaint of Declaratory Judgment state as follows:

## NATURE OF THE ACTION

1. Charter Oak and Travelers seek a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §2201, and Rule 57 of the Federal Rules of Civil Procedure, as to their obligations under three insurance policies described more fully herein.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the controversy is between citizens of different states and the monetary value of the object of this action exceeds $75,000.

3. Plaintiff, Charter Oak, is a Connecticut corporation principally located in Connecticut.

4. Plaintiff, Travelers, is a Connecticut corporation principally located in Connecticut.

5. Defendant, 21st Century Oncology Holdings, Inc., is a Delaware corporation principally located in Florida.

6. Defendant, 21st Century Oncology, Inc. is a Florida corporation principally located in Florida.

7. Defendant, 21st Century Oncology Investments, LLC is a Delaware corporation principally located in New York.

8. Defendant, 21st Century Oncology Services, LLC, is a Delaware corporation principally located in Florida.

9. Defendant, 21st Century Oncology Management Services, Inc., is a Florida corporation principally located in Florida.

10. Defendant 21st Century Oncology, LLC is a Florida corporation principally located in Florida.

11. Defendant 21st Century Oncology of California, a Medical Corporation, is a California corporation principal located in Florida.

12. Paragraph 5-11 Defendants, collectively referred to as "Century," are providers of cancer care services.

13. Defendants, Stuart Kaplan, John Dickman, Rona Polovoy, Jim Bimonte, Stacey Schwartz, Robert Russell, Frank Baburchak, Timothy Meulenberg, Mary Barbieri, Wilhelm Radauscher, Maureen Trelease, George Delgado, Matthew Benzion, Gayle Birken-Sikora and Veneta Delucchi are lead plaintiffs in Class Actions pending in the Middle District of Florida, Fort Myers Division, who identify themselves as Florida residents. They are named in this Declaratory Judgment Action due to their underlying Plaintiff status, but there are no claims against them in this suit.

14. Defendant, Melquiades Bonilla, is lead plaintiff in a Class Action pending in the Superior Court of California, Riverside County, who identifies herself as a California resident. She is named in this Declaratory Judgment Action due to her underlying Plaintiff status, but there are no claims against her in this suit.

15. Defendant, Daniel Padilla, is lead plaintiff in a Class Action pending in the Superior Court of California, Alameda County, who identifies himself as a California resident.

He is named in this Declaratory Judgment Action due to his underlying Plaintiff status, but there are no claims against him in this suit.

16. Defendant, James Corbel, is lead plaintiff in a Class Action pending in the Superior Court of California, Alameda County, who identifies himself as a California resident. He is named in this Declaratory Judgment Action due to his underlying Plaintiff status, but there are no claims against him in this suit.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2) because one or more Defendants are subject to the Court's personal jurisdiction in this action.

18. There is an actual controversy regarding the rights and obligations of Charter Oak and Travelers, and certain insureds and third party claimants, which entitles Charter Oak and Travelers to a declaratory judgment pursuant to 28 U.SC. § 2201.

## FACTUAL BACKGROUND

19. In November, 2015, Century allegedly learned of a September, 2015 data breach and the subsequent unauthorized sale of personal patient information on the "Darknet."[1]

20. In November, 2015, Century sought coverage from Beazley Insurance Company, Inc. ("Beazley") under a policy providing certain coverages for computer/cyber claims and, on information and belief, Beazley has agreed to coverage.

21. In early March, 2016, Century – acting on advice of Beazley consultants – notified roughly 2,000,000 individuals of the data breach, and offered credit monitoring services.

22. On March 18, 2016, Kaplan filed a Class Action against Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit A**.

[1] The "Darknet" is "an overlay network that can only be accessed with specific software, configurations, or authorization, often using non-standard communications protocols and ports." (See Wikipedia.org.)

23. On March 21, 2016, Dickman filed a Class Action against 21st Century Oncology Holdings, Inc., and 21st Century Oncology, Inc. A true and correct copy of that Complaint is attached as **Exhibit B**.

24. On March 21, 2016, Polovoy filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit C**.

25. On March 23, 2016, Bimonte filed a Class Action against 21st Century Oncology, Inc.; 21st Century Oncology, LLC; 21st Century Oncology Management Services, Inc.; 21st Century Oncology Services, LLC; and 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit D**.

26. On March 29, 2016, Schwartz filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit E**.

27. On March 29, 2016, Russell filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit F**.

28. On March 30, 2016, Baburchak filed a Class Action against 21st Century Oncology, LLC; 21st Century Oncology, Inc.; 21st Century Oncology Management Services, Inc.; 21st Century Oncology Services, LLC; and 21st Century Oncology Holdings, Inc. Stubbs later replaced Baburchak as lead plaintiff. A true and correct copy of that Amended Complaint, is attached as **Exhibit G**.

29. On March 31, 2016, Meulenberg filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit H**.

30. On April 4, 2016, Barbieri filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit I**.

31. On April 4, 2016, Radauscher filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit J**.

32. On April 5, 2016, Trelease filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit K**.

33. On April 5, 2016, Delgado filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit L**.

34. On April 18, 2016, Benzion filed a Class Action against 21st Century Oncology, LLC; 21st Century Oncology, Inc.; 21st Century Oncology Management Services, Inc.; and 21st Century Oncology Services, LLC. The Action was originally filed in the S.D. Florida, Palm Beach County Div., but has been transferred to the M.D. of Florida, Fort Myers Div. A true and correct copy of that Complaint is attached as **Exhibit M**.

35. On May 5, 2016, Birken-Sikora filed a Class Action against 21st Century Oncology Holdings, Inc.; 21st Century Oncology, LLC; 21st Century Oncology, Inc.; 21st Century Oncology Management Services, Inc.; and 21st Century Oncology Services, LLC. A true and correct copy of that Complaint is attached as **Exhibit N**.

36. On September 9, 2016, Delucchi filed a Class Action against 21st Century Oncology Holdings, Inc. A true and correct copy of that Complaint is attached as **Exhibit O.**

37. On May 27, 2016, Padilla filed a Class Action against 21st Century Oncology of California, a Medical Corporation; 21st Century Oncology holdings, Inc.; and "Does 1 through 20" (unknown affiliates of named defendants). A true and correct copy of his Complaint, pending in the Superior Court of California, Alameda County, is attached as **Exhibit P**.

38. On May 31, 2016, Bonilla filed a Class Action against 21st Century Oncology of California, a Medical Corporation; 21st Century Oncology holdings, Inc.; and "Does 1 through

20" (unknown affiliates of named defendants). A true and correct copy of his Complaint, pending in the Superior Court of California, Riverside County, is attached as **Exhibit Q**.

39. On April 25, 2016, Corbel filed a Class Action against 21st Century Oncology of California, a Medical Corporation; 21st Century Oncology holdings, Inc.; and "Does 1 through 20" (unknown affiliates of named defendants). A true and correct copy of his Complaint, pending in the Superior Court of California, Alameda County, is attached as **Exhibit R**.

40. On information and belief, Beazley is defending Century against the foregoing Class Actions ("the Class Actions").

## SUMMARY OF CLAIMS ASSERTED IN CLASS ACTIONS

41. The Class Actions name varying Century entities and assert varying facts, but all Class Actions stem from the same alleged September 2015 data breach.

42. The Class Actions allege Plaintiffs have suffered or incurred:

a. loss in value and/or control of personal information;

b. exposure to risk of fraud, identity theft and financial harm;

c. costs of monitoring financial accounts to guard against identify theft, of obtaining credit freezes, and of obtaining frequent credit reports;

d. loss or delay of tax refunds due to fraudulently filed tax returns;

e. loss of money paid to the Century that Plaintiffs would not have paid, had it known of the database breach;

f loss of money paid to the Century for data protection that was never provided;

g. "stress, nuisance and annoyance" or "anxiety, stress, emotional distress"; and/or

h. loss of privacy.

43. The Class Actions assert one or more of these causes of action:

a. Common Law Negligence – failing to properly safeguard personal information and to promptly notify affected individuals of database breach;

b. Negligence Per Se – failing to fulfill requirements under federal and state statutes governing protections for personal information (e.g., the Health Insurance Portability and Accountability Act ("HIPAA"), Federal Trade Commission Act ("FTCA"), and/or state laws governing protections for medical records);

c. Breach of Contract – failing to provide the agreed-upon protection for personal information;

d. Breach of Implied Contract – failing to provide the implicitly agreed-upon protection for personal information;

e. Breach of Implied Covenant of Good Faith and Fair Dealing – failing to provide the implicitly agreed-upon protection for personal information;

f. Violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) – misrepresenting the safeguards applied to personal information;

g. Violation of California Confidentiality of Medical Information Act – failing to protect personal information;

h. Violation of California Customer Records Act – failing to protect personal information;

i. Breach of Fiduciary Duty – failing to protect individuals to whom a greater duty of care was owed;

j. Bailment Failure – failing to fulfill duties arising from bailment of information left in care of Century;

k. Violation of Federal Fair Credit Reporting Act – failing to protect information collected while assembling or evaluating consumer credit information or other consumer information to furnish consumer reports to third parties;

l. Invasion of Privacy – disclosing personal information to third parties as a result of a failure to adequate safeguard that information;

m. Violation of Massachusetts Gen. Laws. Chapter 214 §1B – interfering with privacy rights by failing to adequately safeguard personal information;

n. Publication of Private Facts – intentionally obtaining information about non-patients from third parties without those non-patients' permission and then allowing hackers to access and take that information;

o. Misrepresentation – advising patients that federal standards for safekeeping personal information would be met when, in fact, they were not;

p. Conversion – intentionally obtaining personal information from third parties without their permission, exercising exclusive control over it, and then allowing hackers to access and take that information;

q. Gross Negligence – recklessly disregarding the rights of patients and other persons by failing to detect or ignoring the database breach; and/or

r. Unjust Enrichment/Equitable Estoppel – charging patients for safeguards and never actually providing those safeguards.

44. The Class Actions seek declaratory relief, injunctive relief, compensatory damages, punitive/exemplary damages, statutory damages, treble damages, restitution and/or disgorgement, attorneys' fees and costs.

**COUNT I – DECLARATION AS TO COVERAGE UNDER THE 2015-2016 CGL POLICY**

45. Charter Oak incorporates Paragraphs 1-43, above, as if fully set forth herein.

46. A certified copy of Charter Oak Policy No. P-660-515D1067-COF-15, effective January 31, 2015 through January 31, 2016, is attached as **Exhibit S**.

47. On March 10, 2016, Century reported the data breach.

48. From late March, 2016 through September, 2016, Century sought coverage for the Class Actions under the 2015-2016 CGL Policy.

49. The 2015-2016 CGL Policy identifies the named insureds as 21st Century Oncology Investments, LLC and 21st Century Oncology of California, a Medical Corporation. (See Declarations, IL T0 02 11 89, page 1 of 2; IL T3 02 07 86, rev. 12-08.)

50. The "Commercial General Liability Coverage Form" (CG 00 01 10 01), amended by the "Xtend Endorsement for Healthcare Services" (CG T8 01), the "Amendment of Coverage B – Personal and Advertising Injury Liability" (CG D4 71 02 09), the "Amendment of Coverage – Property Damage" (CG D2 56 11 03), the "Exclusion – Violation of Consumer Financial Protection Laws" (CG D6 18 10 11), and the "Amendment of Bodily Injury Definition" (CG D4 09 04 08) provides, in pertinent part:

**SECTION I – COVERAGES**[2]

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

[2] Cited language in bold and all capital letters appears in that form in the Policy.

a. We will pay those sums that the insured becomes obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no right and no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * *[3]

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

* * *

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" that is expected or intended from the standpoint of the insured….

* * *

**- Violation Of Consumer Financial Protection Laws**

"Bodily injury" or "property damage" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any such violation.

* * *

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no right and no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

* * *

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

[3] *** denotes omitted text.

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

* * *

**f. Breach Of Contract**

"Advertising injury" arising out of a breach of contract.

* * *

**SECTION I – WHO IS AN INSURED**

**1. If you are designated in the Declarations as:**

* * *

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured….

* * *

**-** Any of your subsidiaries … that is not shown as a Named Insured in the Declarations is a Named Insured if:

a. You maintain an ownership interest of more than 50% You maintain an ownership interest of more than 50% in such subsidiary on the first day of the policy period; and

**b.** Such subsidiary is not an insured under similar other insurance.

No such subsidiary is an insured for "bodily injury" or "property damage" that occurred, or "personal injury" or "advertising injury" caused by an offense committed:

**a.** Before you maintained an ownership interest of more than 50% in such subsidiary; or

**b.** After the date, if any, during the policy period that you no longer maintain an ownership interest of more than 50% in such subsidiary.

* * *

**SECTION V – DEFINITIONS**

1. "Advertising injury"

a. Means injury, other than "personal injury", caused by one or more of the following offenses:

(1) Oral or written publication, including publication by electronic means, of material in your "advertisement" ….

(2) Oral or written publication, including publication by electronic means, of material in your "advertisement" …

* * *

b. Includes "bodily injury" caused by one or more of the offenses described in Paragraph a. above.

* * *

3. “Bodily Injury” means:

(a) Physical harm, including sickness or disease, sustained by a person; or

(b) Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

* * *

- "Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

a. Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account.

b. Information bearing on a person's credit worthiness, credit standing or credit capacity.

c. Social security number.

d. Drivers license number.

e. Birth date.

- “Consumer financial protection law" means:

a. The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

b. California's Song-Beverly Credit Card Act …; or

c. Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

* * *

13. “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal injury":

a. Means injury, other than "advertising injury", caused by one or more of the following offenses:

(1) False arrest, detention or imprisonment;

(2) Malicious prosecution;

(3) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises ….

(4) Oral or written publication, including publication by electronic means, of material that slanders or libels ….

(5) Oral or written publication, including publication by electronic means, of material that:

(a) Appropriates a person's name, voice, photograph or likeness;

(b) Unreasonably places a person in a false light; or

(c) Discloses information about a person's private life.

b. Includes "bodily injury" caused by one or more of the offenses described in Paragraph a. above.

* * *

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Property damage does not include loss of or damage to "electronic media or records".

As used in this definition, "electronic media or records" means:

a. Electronic data processing, recording or storage media, such as films, tapes, discs, drums or cells;

b. Data stored on such media; or

c. Programming records for electronic data processing or electronically controlled equipment.

* * *

51. Charter Oak has denied the 2015-2016 CGL Policy covers the Class Actions. True and correct copies of three denial letters, dated April 22, 2016, May 18, 2016, and June 14, 2016, are attached as **Composite Exhibit T**.

52. Century asserts the 2015-2016 CGL Policy covers the Class Actions.

53. There is an actual controversy regarding the parties' rights and relations under the 2015-2016 CGL Policy for the Class Actions, therefore Charter Oak seeks a declaratory judgment pursuant to 28 U.SC. § 2201 that:

a. the Class Actions do not allege "bodily injury" because, while they allege some emotional injury (stress, anxiety), they do not allege such emotional injury resulted from physical harm, sickness or disease;

b. the Class actions do not allege "property damage" because purely economic injuries (e.g., expenses incurred to prevent potential identify theft) and harm to intangible interests (e.g., interests of personal health information) do not constitute physical injury to or loss of use of tangible property;

c. the Class Actions do not allege any form of "bodily injury" or "property damage" caused by an "occurrence" during the policy period;

d. the Class Actions do not allege an "occurrence" because they do not allege "an accident, including continuous or repeated exposure to substantially the same general harmful conditions";

e. any alleged, theoretical "bodily injury" or "property damage" caused by intentional conduct (e.g., conversion) would fall within the Section A "Expected Or Intended Injury" exclusion;

f. any alleged, theoretical "bodily injury" or "property damage" would fall within the Section A "Violation Of Consumer Financial Protection Laws" exclusion;

g. the Class Actions do not allege any "advertising injury" as they do not allege an "advertisement" and also do not allege that Century engaged in any "publication";

h. the Class Actions do not allege any "personal injury" as they do not allege that Century engaged in any "publication";

i. any alleged, theoretical "personal injury" or "advertising injury" caused knowingly by an insured would fall within the Section B "Knowing Violation Of Rights Of Another" exclusion; and/or

j. any alleged, theoretical "advertising injury" would fall within the Section B "Breach of Contract" exclusion.

**COUNT II – DECLARATION AS TO COVERAGE UNDER THE 2016-2017 CGL POLICY**

54. Charter Oak incorporates Paragraphs 1-43, above, as if fully set forth herein.

55. A certified copy of Charter Oak Policy No. P-660-515D1067-COF-16, effective January 31, 2016 through January 31, 2017, is attached as **Exhibit U**.

56. On March 10, 2016, Century reported the data breach.

57. From late March, 2016 through September, 2016, Century sought coverage for the Class Actions under the 2016-2017 CGL Policy.

58. The 2016-2017 CGL Policy identifies the named insured as 21st Century Oncology Investments, LLC and 21st Century Oncology of California, a Medical Corporation. (See Declarations, IL T0 02 11 89, page 1 of 2; IL T3 02 07 86, rev. 12-08.)

59. The 2016-2017 CGL Policy's "Commercial General Liability Coverage Form" (CG 00 01 10 01), amended by the "Xtend Endorsement for Healthcare Services" (CG T8 01), the "Amendment of Coverage B – Personal and Advertising Injury Liability" (CG D4 71 01 15), the "Xtend Endorsement" (CG D1 86 11 03), the "Exclusion – Violation of Consumer Financial Protection Laws" (CG D6 18 10 11), the "Amendment of Coverage – Property Damage" (CG D2 56 11 03), the "Exclusion – Access or Disclosure of Confidential or Personal Information"

(CG D7 46 01 15), and the "Amendment of Bodily Injury Definition (CG D4 09 04 08) provides, in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no right and no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * *[4]

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

* * *

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" that is expected or intended from the standpoint of the insured….

* * *

**- Violation Of Consumer Financial Protection Laws**

"Bodily injury" or "property damage" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any such violation.

- **Access Or Disclosure Of Confidential Or Personal Information**

"Bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

* * *

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

[4] *** denotes omitted text.

a. We will pay those sums that the insured becomes obligated to pay as damages because of “personal and advertising injury” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no right and no duty to defend the insured against any “suit” seeking damages for “personal and advertising injury” to which this insurance does not apply.

* * *

b. This insurance applies to “personal and advertising injury” caused by an offense arising out of your business but only if the offense was committed in the “coverage territory” during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

“Personal and advertising injury” caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict “personal and advertising injury”.

* * *

**f. Breach Of Contract**

“Advertising injury” arising out of a breach of contract.

* * *

**- Access Or Disclosure Of Confidential Or Personal Information**

"Personal injury" or "advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

* * *

**SECTION I – WHO IS AN INSURED**

**1. If you are designated in the Declarations as:**

* * *

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured….

* * *

\- Any of your subsidiaries … that is not shown as a Named Insured in the Declarations is a Named Insured if:

   a. You maintain an ownership interest of more than 50% You maintain an ownership interest of more than 50% in such subsidiary on the first day of the policy period; and

**b.** Such subsidiary is not an insured under similar other insurance.

No such subsidiary is an insured for "bodily injury" or "property damage" that occurred, or "personal injury" or "advertising injury" caused by an offense committed:

**a.** Before you maintained an ownership interest of more than 50% in such subsidiary; or

**b.** After the date, if any, during the policy period that you no longer maintain an ownership interest of more than 50% in such subsidiary.

* * *

**SECTION V – DEFINITIONS**

1. "Advertising injury"

   a. Means injury, other than "personal injury", caused by one or more of the following offenses:

      (1) Oral or written publication, including publication by electronic means, of material in your "advertisement" ….

      (2) Oral or written publication, including publication by electronic means, of material in your "advertisement" …

* * *

   b. Includes "bodily injury" caused by one or more of the offenses described in Paragraph a. above.

* * *

3. "Bodily Injury" means

   a. Physical harm, including sickness or disease, sustained by a person; or

   b. Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

* * *

- "Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

   a. Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account.

   b. Information bearing on a person's credit worthiness, credit standing or credit capacity.

   c. Social security number.

   d. Drivers license number.

   e. Birth date.

- "Consumer financial protection law" means:

a. The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

b. California's Song-Beverly Credit Card Act …; or

c. Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

* * *

13. “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. “Personal or Advertising Injury” means “personal injury” or “advertising injury”

- "Personal injury":

a. Means injury, other than "advertising injury", caused by one or more of the following offenses:

(1) False arrest, detention or imprisonment;

(2) Malicious prosecution;

(3) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises ….

(4) Oral or written publication, including publication by electronic means, of material that slanders or libels ….

(5) Oral or written publication, including publication by electronic means, of material that:

(a) Appropriates a person's name, voice, photograph or likeness; or

(b) Unreasonably places a person in a false light.

b. Includes "bodily injury" caused by one or more of the offenses described in Paragraph a. above.

* * *

17. “Property damage” means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the “occurrence” that caused it.

“Property damage” does not include loss of or damage to electronic media or records, including:

a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b. Data stored on such media; or

c. Programming records for electronic data processing or electronically controlled equipment.

* * *

60. Charter Oak has denied the 2016-2017 CGL Policy covers the Class Actions. (See Composite Ex. T.)

61. Century asserts the 2016-2017 CGL Policy covers the Class Actions.

62. There is an actual controversy regarding the parties' rights and relations under the 2016-2017 CGL Policy for the Class Actions, therefore Charter Oak seeks a declaratory judgment pursuant to 28 U.SC. § 2201 that:

a. the Class Actions do not allege "bodily injury" because, while they allege some emotional injury (stress, anxiety), they do not allege such emotional injury resulted from physical harm, sickness or disease;

b. the Class actions do not allege "property damage" because purely economic injuries (e.g., expenses incurred to prevent potential identify theft) and harm to intangible interests (e.g., interests of personal health information) do not constitute physical injury to or loss of use of tangible property;

c. the Class Actions do not allege any form of "bodily injury" or "property damage" caused by an "occurrence" during the policy period;

d. the Class Actions do not allege an "occurrence" because they do not allege "an accident, including continuous or repeated exposure to substantially the same general harmful conditions";

e. any alleged, theoretical "bodily injury" or "property damage" caused by intentional conduct (e.g., conversion) would fall within the Section A "Expected Or Intended Injury" exclusion;

f. any alleged, theoretical "bodily injury" or "property damage" would fall within the Section A "Violation Of Consumer Financial Protection Laws" exclusion;

g. any alleged, theoretical "bodily injury" or "property damage" would fall within the Section A "Access Or Disclosure Of Confidential Or Personal Information" exclusion;

h. the Class Actions do not allege any "advertising injury" as they do not include any "advertisement" and do not allege that Century engaged in any "publication";

i. the Class Actions do not allege any "personal injury" as they do not allege that Century engaged in any "publication";

j. any alleged, theoretical "personal injury" or "advertising injury" caused knowingly by an insured would fall within the Section B "Knowing Violation Of Rights Of Another" exclusion;

k. any alleged, theoretical "personal injury" or "advertising injury" caused by an insured would fall within the Section B "Access Or Disclosure Of Confidential Or Personal Information" exclusion; and/or

l. any alleged, theoretical "advertising injury" would fall within the Section B "Breach of Contract" exclusion.

**COUNT III – DECLARATION AS TO COVERAGE UNDER THE EXCESS POLICY**

63. Travelers incorporates Paragraphs 1-43, above, as if fully set forth herein.

64. A certified copy of Travelers Policy No. PSM-CUP-515D1067-TIL-15, effective January 31, 2015 through January 31, 2016, is attached as **Exhibit V**.

65. On March 10, 2016, Century notified Travelers of the data breach.

66. From late March, 2016 through September, 2016, Century sought coverage under the Excess Policy for the Class Actions.

67. The Excess Policy identifies the named insured as 21st Century Oncology Investments, LLC and 21st Century Oncology of California, a Medical Corporation. (See Declarations, CG T0 14 04 96; CG D0 74 04 93.) However, the "Amendment of Coverage – Named Insured" (UM 00 94 08 86) defines "you" and "your" to include a named insured and any subsidiary thereof."

68. The "Commercial Excess Liability (Umbrella) Insurance" Form (UM 00 01 11 03), as amended by the "Amendment of Coverage – Property Damage" (UM 03 98 11 11), the "Amendment of Coverage B – Personal Injury and Advertising Injury Liability" (UM 05 11 02 09), and the "Exclusion – Violation of Consumer Financial Protection Laws" (UM 06 09 10 11), provides, in pertinent part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY**
>
> **1. INSURING AGREEMENT**
>
> a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;
>
> (2) The "bodily injury" or "property damage" occurs during the policy period;
>
> * * *
>
> **2. DEFENSE OF CLAIMS OR SUITS.**
>
> a. We have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If we elect to join in the defense of such claims or "suits", we will pay all expenses we incur.

b. We will have the right and duty to defend any "suit" for damages which are payable under Coverages A or B (including damages wholly or partly within the "retained limit") but which are not payable by a policy of "underlying insurance", or any other available insurance because:

(1) Such damages are not covered; or

(2) The "underlying insurance" has been exhausted by the payment of claims.

* * *

**3. EXCLUSIONS**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured….

* * *

**h. "Personal Injury" Or "Advertising Injury" Offenses**

**(1) Knowing Violation Of Rights Of Another**

"Personal injury" or "advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury".

* * *

**- Violation Of Consumer Financial Protection Laws**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "bodily injury", "property damage", "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such violation.

**SECTION V – DEFINITIONS**

1. "Advertising injury":

a. Means injury, other than "personal injury", caused by of one or more of the following "offenses":

(1) Oral or written publication, including publication by electronic means, of material in your "advertisement"…

(2) Oral or written publication, including publication by electronic means, of material in your "advertisement"….

* * *

6. "Bodily Injury" means bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

- “Consumer financial identify information” means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person’s eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

  a. Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account.

  b. Information bearing on a person’s credit worthiness, credit standing or credit capacity.

  c. Social security number.

  d. Drivers license number.

  e. Birth date.

  “Consumer financial protection law” means:

  a. The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA).

  b. California’s Song-Beverly Credit Card Act ….

  c. Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of “consumer financial identify information”.

8. “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

9. “Offense” means any of the offenses listed in the definition of “personal injury” or “advertising injury.”

10. “Personal injury”:

    a. Means injury, other than “advertising injury,” caused by one or more of the following offenses arising out of your business:

       (1) False arrest, detention or imprisonment;

       (2) Malicious prosecution;

       (3) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor ….;

       (4) Oral or written publication, including by electronic means, of material that slanders or libels a person or organization or disparages a person’s or organization’s goods, products or services, provided that the claim is made or the “suit” is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

(5) Oral or written publication, including by electronic means, of material that:

(1) Appropriates a person's name, voice, photograph or likeness;

(2) Unreasonably places a person in a false light; or

(3) Discloses information about a person's private life.

b. Includes "bodily injury" caused by one or more of the "offenses" described in Paragraph a. above.

Such "offenses" must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

* * *

13. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" does not include loss of or damage to "electronic media and records."

As used in this definition, "electronic media and records" means:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records for electronic data, processing or electronically controlled equipment.

* * *

69. Travelers has denied the Excess Policy covers the Class Actions. (See Composite Ex. T.)

70. Century asserts the Excess Policy covers the Class Actions.

71. There is an actual controversy regarding the parties' rights and relations under the Excess Policy for the Class Actions, therefore Travelers seeks a declaratory judgment pursuant to 28 U.SC. § 2201 that:

a. The Class Actions do not allege "bodily injury" that occurred during the policy period;

b. the Class actions do not allege "property damage" because purely economic injuries (e.g., expenses incurred to prevent potential identify theft) and harm to intangible interests (e.g., interests of personal health information) do not constitute physical injury to or loss of use of tangible property;

c. the Class Actions do not allege an "occurrence" because they do not allege "an accident, including continuous or repeated exposure to substantially the same general harmful conditions";

d. any alleged, theoretical "bodily injury" or "property damage" caused by intentional conduct (e.g., conversion) would fall within the Section A "Expected Or Intended Injury" exclusion;

e. any alleged, theoretical "bodily injury" or "property damage" would fall within the Section A "Violation Of Consumer Financial Protection Laws" exclusion;

f. the Class Actions do not allege any "advertising injury" as defined in Coverage B as they do not allege an "advertisement" and do not allege that Century engaged in any "publication";

g. the Class Actions do not allege any "personal injury" as they do not allege that Century engaged in any "publication";

h. any alleged, theoretical "personal injury" or "advertising injury" caused knowingly by an insured would fall within the Section B "Knowing Violation Of Rights Of Another" exclusion;

i. any alleged, theoretical "personal injury" or "advertising injury" would fall within the Section B "Violation of Consumer Financial Protection Laws" exclusion; and/or

j. any alleged, theoretical "personal injury" or "advertising injury" would fall within the Section B "Breach of Contract" exclusion.

**PRAYER FOR DECLARATORY RELIEF**

72. Based on the allegations in Paragraphs 1 through 70, above, Charter Oak and Travelers respectfully ask this Court to decide, as a matter of law:

(a) Charter Oak has no duty under the 2015-2016 CGL Policy to defend and/or indemnify any Century entity against the Class Actions;

(b) Charter Oak has no duty under the 2016-2017 CGL Policy to defend and/or indemnify any Century entity against the Class Actions; and

(c) Travelers has no duty under the Excess Policy to defend and/or indemnify any Century entity against the Class Actions.

**WHEREFORE**, Plaintiffs, Charter Oak and Travelers, pray that this Court enter judgment in their favor on Counts I, II and III of this Complaint.

Dated: September 26, 2016

Respectfully submitted,

**ROBINSON & COLE LLP**
777 Brickell Avenue, Suite 1370
Miami, FL 33131
Telephone: 786-725-4120
Facsimile: 786-725-4121

By:_______________
Eugene P. Murphy
Florida Bar No. 638501
emurphy@rc.com
***Attorneys for Plaintiffs,***
***The Charter Oak Fire Insurance Company;***
***and Travelers Property Casualty Company of America***